UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JULIA C. FLOWERS,

        Plaintiff,



v.                                    Case No.  8:11-cv-2576-T-30AEP



MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.

_____/

### **REPORT AND RECOMMENDATION**

        Plaintiff Julia C. Flowers seeks judicial review of the denial of her claim for

Supplement Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision

was not based on substantial evidence and failed to employ the proper legal standards, the

Court recommends that the Commissioner's decision be reversed and remanded.


### **I.**

#### **A.  Procedural Background**

        Plaintiff applied for SSI benefits on October 8, 2009 (Tr. 138), alleging disability as

of this date due to bipolar disorder, memory loss, back pain, migraine headaches, and chronic

obstructive pulmonary disease ("COPD") (Tr. 169).  Plaintiff's claim was initially denied on

March 30, 2010 (Tr. 64), and upon reconsideration on April 23, 2010 (Tr. 76).  On June 23,

2010, Plaintiff timely requested an administrative hearing.  (Tr. 79-81.)  On April 5, 2011, the

ALJ held a hearing (the "Hearing") at which Plaintiff appeared, testified, and was represented

by counsel, and an impartial vocational expert ("VE") also appeared and testified.  (Tr. 25-

61.)  Subsequently, the ALJ issued an unfavorable decision finding Plaintiff not disabled and

accordingly denied Plaintiff's claim for benefits.  (Tr. 7-24.)  Plaintiff then requested review

from the Appeals Council, which the Appeals Council denied.  (Tr. 1-6.)  Plaintiff then timely

filed a Complaint with this Court.  (Dkt. No. 1.)  The case is now ripe for review under 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff was forty-eight years old when the ALJ issued his decision in this case.  (Tr.

128, 138.)  She stands approximately 5'4" tall and weighs approximately 130 pounds.  (Tr. 29-

30.)  She is single with no children.  (*Id.*)  She has a sixth grade education.  (Tr. 177.)

Although Plaintiff had no reported earnings over the past fifteen years (Tr. 130-137), Plaintiff

did note that she has worked as a cook (Tr. 154-157).  Plaintiff alleged that she became totally

disabled on October 8, 2009, as a result of bipolar disorder, memory loss, back pain, migraine

headaches, and COPD.  (Tr. 169.)  Plaintiff further alleges that she could only walk 500 feet,

sit for forty-five minutes, stand for ten to fifteen minutes, and could not lift a gallon of milk.

(Tr. 39, 41, 42.)

After reviewing the evidence and testimony, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, scoliosis, arthritis, degenerative disc disease ("DDD"), spondylosis, degenerative joint disease ("DJD"), gastroesophageal reflux disease ("GERD"), COPD, asthma, emphysema, migraines, learning disorder/borderline intellectual functioning ("BFD"), major depressive disorder, anxiety, and post traumatic stress disorder ("PTSD").  (Tr. 12, Finding 2.)  The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13, Finding 3.)  After consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work[1] with the following limitations, among others: (1) must be able to sit six hours in an eight-hour workday; (2) must avoid ladders/ropes, scaffolds, unprotected heights or operation of hazardous machinery; (3) can occasionally climb ramps/stairs, balance, stoop, and kneel but never crouch or crawl; and (4) should avoid pulmonary irritants.  (Tr. 14, Finding 4.)  The ALJ also noted that Plaintiff needed an assistive device for ambulation.  (*Id.*)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and functionally limiting effects of her symptoms were inconsistent with the evidence of record and could not be fully credited.  (Tr. 15-18.)

The ALJ determined that Plaintiff had no past relevant work.  (Tr. 18, Finding 5.) Because the ALJ found that Plaintiff presented additional limitations, the ALJ relied on the VE's assessment to determine the extent to which these limitations eroded Plaintiff's ability to perform unskilled light occupations.  (Tr. 18.)  Given Plaintiff's age, education, work experience, and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy representative of sedentary unskilled jobs, such as an inspector as described in the Dictionary of Occupational Titles, a sorter, and a weight tester. (Tr. 19.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act.  (Tr. 19, Finding 10.)

**II.**

In order to be entitled to benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." *Id*. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards. *See id*.

at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by

administrative agencies . . . may be reversed . . . only when the record compels a reversal; the

mere fact that the record may support a contrary conclusion is not enough to justify a reversal

of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004)

(*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law

and demonstrate that he has done so. While the court reviews the Commissioner's decision

with deference to the factual findings, no such deference is given to the legal conclusions.

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing

*Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The scope for review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

**III.**

Plaintiff challenges the ALJ's decision on two grounds:

(1)     The ALJ failed to give Plaintiff's treating physician sufficient weight in analyzing the severe restrictions of Plaintiff's impairments; and

(2)     The ALJ's credibility finding was not supported by substantial evidence.

---

to October 1, 1981.

For the reasons that follow, the Court recommends that the case be reversed and remanded because the ALJ failed to apply the correct legal standards and his decision is not supported by substantial evidence.

### A.      Whether the ALJ Accorded Proper Weight to Dr. DeSilva's Report.

Plaintiff contends that the ALJ failed to give proper weight to Plaintiff's treating doctor, Dr. DeSilva, whose description of the claimant's physical restrictions essentially rendered the claimant unable to perform even sedentary work. (Dkt. No.  15 at 11-15; Tr. 366-381.)  Plaintiff argues that the ALJ did not give great weight to this opinion and did not articulate good cause for doing so.  (*Id.*)

Generally, when determining whether a claimant is disabled, more weight should be afforded to the opinions of a treating source as opposed to a non-treating source, because:

> ... these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*See* 20 C.F.R. § 404.1527(d).  In determining the weight to be afforded to medical opinions such as opinions of a treating source, an ALJ shall consider the examining relationship, length of the treatment and frequency of the examination, nature and extent of the treatment relationship, supportability of a medical source, consistency of the opinions, specialization of the treating source, as well as certain "other factors."  *See id*.  Notwithstanding the Social Security

Regulations, the ALJ is not required to explicitly address each of these enumerated factors. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Rather, the ALJ must provide "good cause" for rejecting a treating physician's medical opinions. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *Lewis,* 125 F.3d at 1440. In fact, the ALJ may reject any opinion when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Further, this Circuit has held that a treating physician's opinion is not entitled to great weight if evidence of a claimant's daily activities contradicts the opinion. *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

Here, as previously noted, Plaintiff asserts that Dr. DeSilva's opinion regarding Plaintiff's ability to work should have been given controlling weight because Dr. DeSilva was Plaintiff's treating rheumatologist. (Tr. 366-71.) Notably, Dr. DeSilva diagnosed Plaintiff with fibromyalgia, and the ALJ listed Plaintiff's fibromyalgia as a severe impairment. (Tr. 12, 366-71.) Although not specifically argued by either party, the Eleventh Circuit has recognized that fibromyalgia cases are unique. *Stewart v. Apfel*, No. 99-6132, 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000). Indeed, this District has noted in *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1335 (M.D. Fla. 2003) that:

fibromyalgia is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work. The Eleventh Circuit has observed:

> '[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.' *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret data for the reader. *Stewart v. Apfel*, No. 99-6132, 2000 U.S. App. LEXIS 33214, at *8-9 (11th Cir. Dec. 20, 2000) (citation omitted).
>
> . . .
>
> Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. *See Stewart*, 2000 U.S. App. LEXIS 33214, at *8 (citation omitted); *see also Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367 (N.D. Ga. 2001) (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F.R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight).

*Id.* at 1335-36. In *Morrison v. Barnhart*, the Court remanded the case because the ALJ, in discrediting the treating rheumatologist's opinion, insufficiently explained that the treating rheumatologist's opinion was "not consistent with the evidence of record as a whole, including the doctor's own examination findings[.]" *Id.* at 1336. The Court found that the ALJ's explanation for discrediting the treating physician's opinion was "too general to permit meaningful judicial review in this case." *Id.*

9

On the other hand, even in fibromyalgia cases, the Eleventh Circuit has stated that an ALJ may discredit a treating physician's opinion if the ALJ's ruling is supported by specific findings, which are clearly articulated. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). The Court in *Moore v. Barnhart* explained that the ALJ's decision was not solely based on a lack of objective medical evidence, making *Stewart v. Apfel* inapplicable; the ALJ's decision was also based on inconsistencies with the claimant's daily activities and claims of infirmity. *Id.*; *see also Peters v. Astrue*, 232 Fed. Appx. 866, 871-72 (11th Cir. 2007) (finding *Stewart* inapplicable because the facts were distinguishable as there was other medical evidence that contradicted the treating physician's diagnosis of fibromyalgia, the treating physician's own records were inconsistent, and the claimant's testimony was not credible because it conflicted with her daily activities). In *Moore v. Barnhart*, the Court went on to state that even though a treating physician's testimony can be particularly helpful in fibromyalgia cases because objective medical evidence is often lacking, the ALJ adequately articulated specific justification for discounting the treating physician's opinion. 405 F.3d at 1212.

In reaching his decision in this case, the ALJ did not clearly articulate sufficient justification for discounting Dr. DeSilva's opinion. The ALJ explicitly recognized that Dr. DeSilva diagnosed the Plaintiff with cervical spondylosis, lumbar spondylosis, bilateral knee pain, and fibromyalgia, and noted that Dr. DeSilva's opinion essentially rendered the Plaintiff unable to perform even sedentary work. (Tr. 15-16.) However, the ALJ concluded that Dr. DeSilva's opinion should not be given "controlling weight" by finding that:

> Dr. DeSilva's opinion is overly restrictive and *not supported by the objective signs and findings*. It appears Dr. DeSilva's assessment is based largely on the claimant's subjective report. . . . [I]t is noteworthy that within about five months of issuing this very restrictive assessment, Dr. DeSilva reported that the claimant had a part-time sit-down job. Although the claimant continues to have pain and other complaints, the [ALJ] factored these findings into the residual functional capacity, consistent with more recent medical records and findings. Furthermore, the [ALJ] notes that the ultimate issue of disability is a finding of fact reserved to the Commissioner.

(Tr. 16.) (emphasis added). Thus, the ALJ, at least in part, discounted Dr. DeSilva's opinion because, among other things, Plaintiff's fibromyalgia was not supported by objective signs and findings. The ALJ's finding in this regard is in error because it clearly contradicts the case law discussed above, which details that a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of the severity of fibromyalgia. The Court recognizes that the ALJ further discounted Dr. DeSilva's opinion by noting that Dr. DeSilva reported that Plaintiff had a part-time, sit-down job. However, the ALJ did not clearly articulate any specific findings in this regard, which could have arguably made the ALJ's error harmless. In other words, similar to the reasons that required remand in *Morrison v. Barnhart*, the Court cannot conclude given this record that the ALJ's finding regarding Dr. DeSilva's opinion is supported by substantial evidence because the ALJ failed to properly articulate and justify his finding.

As such, the appropriate remedy is to reverse and remand this action for additional proceedings. *See e.g.*, *Harris v. Astrue*, 546 F. Supp. 2d 1267, 1280 (N.D. Fla. 2008) (remanding a fibromyalgia case so that the ALJ could properly articulate specific findings regarding the

11

treating physician's opinion and diagnosis).  Upon remand, the ALJ must reconsider Dr. DeSilva's

opinion.  If the ALJ again determines that Dr. DeSilva's opinion should not be given great weight

particularly regarding Plaintiff's fibromyalgia, then as discussed above, the reasons for that finding

cannot be based upon lack of objective findings, but rather must be clearly articulated and

supported by substantial evidence.

**B.     Whether the ALJ's Reasons for Finding Plaintiff's Subjective Complaints Not Credible Are Supported by Substantial Evidence.**

Plaintiff further argues that the ALJ made an improper credibility finding and erred by

finding Plaintiff not disabled. (Dkt. No. 15 at 16-18.)  Specifically, Plaintiff alleges that the ALJ

failed to articulate an adequate basis for discrediting Plaintiff's pain testimony.  (*Id.*)  The Court

finds that the ALJ gave sufficient consideration to Plaintiff's subjective complaints of pain in

arriving at his decision, which is based on substantial evidence.  Accordingly, the ALJ did not err.

When a claimant alleges disability through subjective complaints of pain or other

symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either

(2) objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (3) that the objectively determined medical condition is of such a severity that it can

be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the ALJ

discounts a plaintiff's testimony concerning subjective complaints, he must "articulate explicit and

adequate reasons" for doing so.  *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553,

1561-62 (11th Cir. 1995)).  "Although this circuit does not require an explicit finding as to

credibility, . . . the implication must be obvious to the reviewing court." *Foote*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Determinations of credibility, including the credibility of Plaintiff's testimony, is the duty of the Commissioner. *Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (citation omitted). When evaluating a claim based on disabling complaints of pain and other symptoms, the ALJ considers statements made by the plaintiff about the frequency, intensity, and duration of symptoms, as well as medical findings, statements by treating and non-treating physicians, and evidence of how the alleged pain affects the daily activities including the plaintiff's ability to work. 20 C.F.R. § 416.929(a). While "particular phrases and formulations" are not required when making a credibility determination, there must be more than boilerplate language explaining the ALJ's decision to not fully credit the plaintiff's testimony. *Dyer*, 395 F.3d at 1210-11 (internal quotations and citations omitted).

The ALJ, while not specifically citing to Eleventh Circuit case law regarding the pain standard, properly applied the pain standard in considering Plaintiff's subjective complaints regarding her alleged mental and physical impairments, and his determination is supported by substantial evidence. (Tr. 14-18.) Specifically, the ALJ concluded that the evidence of record established that Plaintiff had underlying medical impairments that reasonably could produce her alleged symptoms. (Tr. 15.) However, the ALJ also determined that there were inconsistencies between Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms and the evidence of record, and thus, the ALJ did not fully credit Plaintiff's testimony.

(*Id.*)  After a review of the medical evidence and testimony on record, the Court finds that the ALJ's credibility finding was supported by substantial evidence, and the ALJ articulated explicit and adequate reasons for rejecting Plaintiff's pain allegations.

In fact, the ALJ highlighted several reasons for determining that Plaintiff's statements were not entirely credible, all of which were supported by the record.  (Tr. 15-18.)  For example, Plaintiff's testimony regarding her daily activities is inconsistent with her statements regarding the severity of her pain and with the medical evidence of record.[3]  At the Hearing, Plaintiff discussed her pain as well as the activities that she was still able to do.  (Tr. 25-61.)  Specifically, Plaintiff said that she was still able to do some household chores and prepare simple meals but had to take breaks between tasks (Tr. 46-47), she can only stand for periods of ten to fifteen minutes because of the pain, and she can only walk a distance of twenty feet and sometimes had to use a walker three to four times a week (Tr. 41).  On the other hand, as the ALJ noted, Plaintiff's March 2010 consultative exam found that Plaintiff "had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles[,] . . . 5/5 strength in her upper and lower extremities[,] . . . [Plaintiff's] joints were stable and nontender with no redness, heat, swelling, or effusion[, and] . . . [Plaintiff] had no motor or sensory deficits."  (Tr. 16.)

---

[3]The Court also points to the ALJ's discussion of Plaintiff's inconsistent statements regarding her daily activities—one statement given to one consultative examiner and another statement given to another consultative examiner on the same day—both of which conflict with each other, and the former is internally inconsistent.  (Tr. 13.)  The Court finds that the ALJ relied on substantial evidence in discrediting the Plaintiff's complaints regarding severity of her pain.

Additionally, Plaintiff's statements regarding the severity of her pain are inconsistent with the medical records, including reports from Plaintiff's treating physicians. As the ALJ discussed, Dr. Mittal treated Plaintiff for her pulmonary complaints and noted that Plaintiff's complaints were inconsistent with clinical findings. (Tr. 372-81.) Dr. Mittal's progress notes document that Plaintiff had worsening of COPD with age, and PFTs (pulmonary function tests) revealed moderate expiratory airflow obstruction, however, there was positive bronchodilator response and an FEV1 of seventy-three percent. (Tr. 15, 378.) In examinations performed in May 2010 and July 2010, Dr. Mittal expressed some doubt about the severity of Plaintiff's subjective report regarding her symptoms compared to the objective findings. (Tr. 372-81.) For instance, Dr. Mittal stated in May 2010 that he "think[s] her symptoms are out of proportion to PFTs findings." (Tr. 378.) In July 2010, Dr. Mittal again stated, "[s]ometimes her symptoms are out of proportional (sic) to her PFTs and physical findings probably given her psychiatric illness." (Tr. 376.)

Furthermore, Dr. DeSilva reported that Plaintiff had started a part-time, sit-down job in November 2010, which would indicate that Plaintiff's pain is not as severe as she alleged if she was able to work. (Tr. 17, 397.) Despite this report, the ALJ gave Plaintiff the benefit of the doubt and significantly reduced her RFC to accommodate all of her impairments based on the fact that she still had residual complaints and symptoms making it difficult for her to perform certain exertional and postural activities. (Tr. 17.) The ALJ determined that Plaintiff could still do some work, and therefore, Plaintiff's allegations that she could not perform any work activity because of the severity of her pain was not credible. (Tr. 18.) As such, the ALJ considered Plaintiff's subjective complaints of pain and other symptoms and determined that they were inconsistent with

the evidence as a whole, including the medical records and Plaintiff's own testimony. *See* 20 C.F.R. § 416.929(c)(4) (in evaluating symptoms, including pain, inconsistencies between the plaintiff's statements and evidence may be considered when determining whether the plaintiff is disabled); S.S.R. 96-7p, 1996 WL 374186, at \*1 (July 2, 1996) (the credibility of statements made by the plaintiff may be indicated by consistency with own statements and with the record).

The ALJ properly articulated his reasons for finding Plaintiff's subjective complaints concerning the severity of pain somewhat exaggerated. Under the substantial evidence standard, the principle that findings of fact may be reversed only when the record compels a reversal equally applies to credibility determinations. Here, the record does not compel a reversal as to the ALJ's credibility determination of Plaintiff. However, in light of the Court's determination that the ALJ must reconsider Dr. DeSilva's opinion, upon remand, the ALJ should also reconsider the credibility determination of Plaintiff. The ALJ should specifically articulate if his credibility finding is altered in any way upon revisiting Dr. DeSilva's opinion.

**IV.**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1)      The decision of the Commissioner be **REVERSED** and the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with the recommendations set forth above; and

2)      The Clerk be directed to enter judgment for Plaintiff and close the case.

16

**IT IS SO REPORTED** in Tampa, Florida, on this 21st day of February, 2013.


ANTHONY E. PORCELLI
United States Magistrate Judge


### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed finding and

recommendations contained in this report within fourteen (14) days from the date it is served

on the parties shall bar an aggrieved party from a *de novo* determination by the District Court

of issues covered in the report, and shall bar the party from attacking on appeal factual findings

in the report accepted or adopted on appeal by the District Court except upon grounds of plain

error or manifest injustice. 28 U.S.C. § 636(b)(1)(c); Local Rule 6.02; *Nettles v. Wainwright*,

677 F.2d 404 (5th Cir. 1982) (*en banc*).


Copies furnished to:

The Honorable James S. Moody, Jr.
Counsel of Record